

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

**ENTERED**
**02/14/2014**

| | | |
|---|---|---|
| IN RE: | § | |
| **STN TRANSPORT LTD** | § | **CASE NO: 12-70617** |
| Debtor(s) | § | |
| | § | **CHAPTER  11** |
| | § | |
| **ANGELINA ENRIQUETA DE LEON MARTINEZ** | § | |
| | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 13-07004** |
| | § | |
| **STN TRUCKING & INDUSTRIAL EQUIPMENT INC,** *et al* | § | |
| | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

Plaintiff's Motion for Summary Judgment is denied. (Case No. 13-7004, ECF No. 50). STN Transport's Motion for Summary Judgment is granted. (ECF No. 49).

### Background

On November 20, 2012, Plaintiff filed an Original Petition, Angelina Enriqueta Deleon Martinez ("Martinez") v. Maricela Castano a/k/a Maricela C. Navarrete ("Castano") and STN Trucking & Industrial Equipment, Inc. ("Trucking") in the District Court of Maverick County, Texas. The original petition alleged breach of contract against Castano and Trucking for failing to pay the amount owed to Martinez under the terms of certain notes and security agreements allegedly signed by Castano on behalf of Trucking.

On January 21, 2013, STN Transport LTD ("Transport"), the Chapter 11 Debtor, filed a plea in intervention in the state court litigation and subsequently removed the case to the United States Bankruptcy Court for the Western District of Texas, San Antonio.  Transport then filed a motion to transfer venue to the United States Bankruptcy Court, Southern District of Texas,

McAllen Division. Following removal and transfer to this Court, Plaintiff was granted leave to amend the Original Complaint. Plaintiff's amended complaint alleges that Trucking fraudulently transferred seven trucks to Transport in violation of the Texas Uniform Fraudulent Transfer Act.

### Facts

The sole shareholder of STN Transport LTD ("Transport"), Jose Rene Tijerina Mendoza, ("Tijerina"), formed STN Trucking and Industrial Equipment, Inc. ("Trucking") on February 21, 2012.  Tijerina arranged for Maricela Castaño to assist with the operation of Trucking.  Tijerina maintains that Castano was hired to be an employee of Trucking, but that she never had authority to bind Trucking.  Plaintiff contends that Castano was an officer/manager of the corporation and had the authority to unilaterally bind Trucking.

Although the parties dispute the extent of Castano's role in Trucking, the following facts appear to be undisputed: Castano did not have any ownership interest in Trucking.  Tijerina instructed Castano to file a Certificate of Filing to incorporate STN Trucking with the Secretary of State.  Castano and Tijerina are listed as co-directors of Trucking on the Certificate of Filing. Tijerina caused Trucking to acquire seven trucks in order to operate the business. During all relevant times, Castano was in possession of all seven vehicles and maintained control of the original titles issued in Trucking's name.  Castano signed a document (but not Tijerina) entitled "Consent to Action Without Meeting," which purports to appoint Castano as an officer for a term of one year and grant her the authority bind Trucking.

Sometime around May 1, 2012, problems arose between Tijerina and Castano.  On June 22, 2012, Tijerina sent Castano a letter via express certified mail notifying her that she had no authority to conduct the affairs of Trucking.

Tijerina formed the new entity, STN Transport, Ltd. on May 29, 2012. Tijerina caused the subject equipment to be transferred from Trucking to Transport between the months of May and July 2012.  Tijerina went to a Department of Motor Vehicles Office in Hidalgo County, Texas and obtained new titles for the vehicles in Transport's name. Transport did not pay any money or provide any consideration to Trucking for the transfer of the subject equipment.  This transfer creates the basis of Plaintiff's TUFTA action.

On June 29, 2012, a Temporary Restraining Order was entered by the 365th District Court Maverick County, Texas which restrained Castano from taking/impairing/disposing of any property of Trucking and also restrained her from binding/contracting for Trucking.  On July 16, 2012, the 365th District Court entered a Temporary Injunction, which enjoined Castano from engaging in the same activities as restrained by the State TRO.

On August 28, 2012, a promissory note was executed whereby Castano borrowed $73,697.00 from Plaintiff.  On October 1, 2012, a second promissory note was executed whereby Castano borrowed an additional $53,000.00. Castano is the sole signatory on both promissory notes.  In addition, security agreements were executed at the time of each promissory note, purporting to pledge Trucking's vehicles as collateral to secure repayment of the notes. Trucking is identified as "Debtor" and "Borrower" on both Security Agreements, but is not mentioned in the promissory notes.

As part of Plaintiff's due diligence process, Castano provided Plaintiff with original titles (in Trucking's name) to the vehicles on May 22, 2012.  Plaintiff also relied on the following information: Trucking's Certificate of Filing identified Castano and Tijerina as directors of Trucking; Plaintiff confirmed that Trucking was the title owner of vehicles by conducting a vehicle title check on the Texas Motor Vehicle Department website towards the end of May;

Plaintiff met with Castano at Trucking's registered office and visited the site where Castano was storing the vehicles.

After Tijerina transferred the titles to Transport, Castano continued to possess the vehicles and the original titles (in Trucking's name) at the time that both promissory notes were executed (August 28, 2012 and October 1, 2012).  Transport did not take possession of the vehicles until the end of October, 2012.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the

fact.[1]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact."  *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara*, 353 F.3d at 403.  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  *Sossamon*, 560 F.3d at 326.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim.

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

*Norwegian Bulk Transp. A/S*, 520 F.3d at 412.   Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.   *Celotex*, 477 U.S. at 324.   The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.   *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

Plaintiff has asserted a claim against Trucking (the alleged transferor) for violation of the Texas Uniform Fraudulent Transfer Act.   In order to prove fraudulent transfer, the statute requires a showing that:

> (a) A transfer made or obligation incurred by a **debtor** is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with the **actual intent** to hinder, delay, or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Commerce Code § 24.005(a)(1).

The main point of contention in this case is whether Trucking is a debtor under TUFTA. TUFTA liability attaches if, and only if, the transferor is a "debtor." *Bado Equip. Co., Inc. v. Bethlehem Steel Corp.*, 814 S.W.2d 464 (Tex. App. 1991) ("A fraudulent conveyance is a transfer by a debtor with the intent to hinder or defraud his creditors. Thus, the cause of action is against the party making the transfer, not against the party accepting the transfer. Furthermore, Bethlehem's summary judgment proof established that it was not in the position of a debtor to

Bado. Thus, we hold that no fact issues existed as to the claim of fraudulent conveyance.")
(internal citations omitted). Under TUFTA, "debtor" is defined as "a person who is liable on a
claim." Tex. Bus. & Com. Code Ann. § 24.002(6).

Transport (the alleged transferee) makes several arguments to support its assertion that
Trucking is not a debtor under TUFTA. First, Transport argues that in order to fall within the
meaning of "debtor," Plaintiff must show that Trucking is *personally* liable on the promissory
notes due to Plaintiff.  It alleges that because Trucking is not a party to the promissory notes, and
only allegedly a party to the security agreements, Trucking cannot be a "Debtor" under TUFTA.
In other words, Transport contends that if Trucking is liable only as to its assets, this would be
insufficient to establish the debtor-creditor relationship required to maintain a TUFTA action.

Plaintiff applies a broader meaning of the term Debtor, as it is defined under Article 9:
"[A] person having an interest, other than a security interest or other lien, in the collateral,
whether or not the person is an obligor." Article 9 defines "obligor" as:

> [A] person that, with respect to an obligation secured by a security interest in or
> an agricultural lien on the collateral, (i) owes payment or other performance of the
> obligation, (ii) has provided property other than collateral to secure payment or
> other performance of the obligation, or (iii) is otherwise accountable in whole or
> in part for payment or other performance of the obligation. . ."

Tex. Bus. & Com. Code Ann. § 9.102 (a)(60).

Based on the Article 9 definition, Plaintiff makes three alternative arguments to support
its theory that Trucking was a debtor to Plaintiff: (i) Trucking's physical possession of the
equipment is a sufficient interest in the equipment to make Trucking a "debtor" to plaintiff; (ii)
Trucking is personally liable on the promissory notes based on its theory that the promissory
notes and security agreements should be read together to infer that Castano signed the
promissory notes on behalf of Trucking; (iii) Even if not personally liable on the notes, Trucking

is an "obligor" as it is defined in section 9.102(a)(60) because Trucking pledged its equipment to secure the notes under the security agreements.

The court rejects Plaintiff's first argument, which seems to suggest that Trucking's mere possession of the equipment, without binding Trucking under any of the loan documents, somehow create a debtor-creditor relationship with the plaintiff.  In order to create a debtor-creditor relationship, Trucking must have undertaken some obligation to Plaintiff.[2]

The court rejects Plaintiff's second argument that Trucking is personally liable on the promissory notes.  The only conceivable way that this Court could find that Castano signed the promissory notes on behalf of Trucking is if the Court accepts Plaintiff's theory that the notes should be read together with the security agreements to import Trucking's signature into the promissory notes. The court rejects this theory. The promissory notes unambiguously demonstrate that Castano signed the agreement in her individual capacity. The promissory notes are signed by Maricela Castano's name alone and contain no indication that she was signing in a representative capacity.  Moreover, Trucking is not listed or mentioned anywhere in the notes and Castano is identified as the sole borrower and maker of the note.

As Transport points out, construing the promissory notes and security agreements together would only apply for purposes of interpreting ambiguous terms.  Plaintiff's theory does not permit the Court to import a signature from one document to another. "A person is not made a party to a contract merely by being named and described in it or merely by the fact that such a contract is referred to in a second instrument in a way to evidence that such person is a party in another contract." *Lawrence v. United States*, 378 F.2d 452, 461 (5th Cir. 1967). Accordingly, the court finds that Trucking is not personally liable on the notes.

---

[2] The Court is not expressing a view on whether it must be a personal obligation to fall within the definition of "debtor" under TUFTA.

As for Plaintiff's third argument, the Court will assume that the broad definition of "debtor" applies for purposes of summary judgment[3] and determine whether Trucking is liable under the security agreements, which purport to pledge its equipment to secure the obligations under the promissory notes.

Plaintiff cannot demonstrate that Castano obligated Trucking under the terms of the security agreements. Transport argues that Castano did not obligate Trucking under the Security Agreement because (i) Castano did not even purport to sign the loan documents in a representative capacity; (ii) Even if she did purport to bind Trucking, Castano lacked authority to do so; and (iii) Transport owned the vehicles at the time the promissory notes and security agreements were executed so Trucking could not pledge assets it no longer owned. The Court accepts Transport's second argument that Castano lacked authority to bind Trucking to the security agreements.

**Security Agreements**

It is ambiguous as to whether Castano purported to sign the Security Agreements as a representative of Trucking. (*See* ECF No. 50-2 at 13). The signature page appears as follows:

*14. Debtor Name(s) and Signatures*

*By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Debtor under this Agreement.*

*Debtor: Maricela Castano, S.T.N. Trucking and Industrial Equipment Inc.*

*By: [Maricela Castano's signature]*

*Debtor Name and Signature*

---

[3] The Court need not decide whether the definition of "Debtor" under TUFTA requires Trucking to be liable on the debt because the Court finds as a matter of law that Castano did not have the authority to bind Trucking to the security agreements.

Maricela Castano's signature is affixed on the signature line without any indication that it is on behalf of Trucking. The line above the signature line, which reads *Debtor: Maricela Castano, S.T.N. Trucking and Industrial Equipment Inc.*, creates the ambiguity. This line may be interpreted to indicate Castano's intent to sign the security agreement in a representative capacity. Trucking is also listed as a "Debtor" and "Borrower" on the first page of the security agreement.

The Court need not resolve the ambiguity. Even if the Court were to find that Castano purported to sign the security agreements on behalf of Trucking, the Court finds as a matter of law that Castano lacked the authority to do so.

**Castano Lacked Authority to Bind Trucking**

The evidence shows that Castano lacked authority to bind Trucking at the time the loan documents were executed. In fact, the evidence shows that Castano *never* had authority to bind Trucking because she was not an officer of Trucking.

Absent actual or apparent authority, an agent may not bind a principal. *Suarez v. Jordan*, 35 S.W.3d 268, 272-73 (Tex. App. 2000). Both actual and apparent authority are created through the conduct of the principal directed either to the agent (actual authority) or to a third person (apparent authority). *Id.* at 273. An "agent" is one who is authorized by a person or entity to transact business or manage some affair for that person or entity. *Neeley v. Intercity Mgmt. Corp.*, 732 S.W.2d 644 (Tex. App. 1987).

**Actual Authority**

Plaintiff relies on the following evidence to support its claim that Castano had the actual authority to bind Trucking: (i) Castano was listed as a co-director of Trucking on the Certificate

of Filing; (ii) there is a document signed by Castano purporting to name Castano as an "officer" of Trucking; (iii) Castano maintained possession of the vehicles and their original titles (in Trucking's name) during all relevant times.

First, "neither the board of directors nor an individual director of a business is, as such, an agent of the corporation or of its members."[4]  For there to be an agency relationship, there must be some act constituting an appointment of a person as an agent; it is a consensual relationship.  *Id*.  The proper way for a corporation to grant certain individuals with the power to bind the corporation is by having the board of directors appoint an officer or expressly grant such rights in the Articles of Incorporation or its bylaws.  In this case, Article 6 of the Certificate of Filing created an Initial Board of Directors, listing Jose Rene Tijerina Mendoza and Maricela Castano as the two directors, "who will serve as initial Directors until the first annual meeting of Shareholders and successors are elected and qualified." (ECF No. 50-3 at 86).  Castano's director status did not grant Castano with any authority to bind Trucking, much less the authority to pledge all of the company's assets.  In fact, the evidence shows that the board of directors never had any meetings.  Nor does Castano's possession of the vehicles and their original titles create implied authority for Castano to pledge all of Trucking's assets as collateral without any board action or the sole shareholder's approval.

Plaintiff's contention that the "Consent to Action Without Meeting" document granted Castano the right to bind Trucking also fails because it was not authorized by the board of directors—it was only signed by one director, Castano.  Accordingly, Castano's status as a

---

[4] *See* Restatement (Second) of Agency § 14C (1958) ("He has no power of his own to act on the corporation's behalf, but only as one of the body of directors acting as a board. Even when he acts as a member of the board, he does not act as an agent, but as one of the group which supervises the activities of the corporation.").

director and a document signed by only one director did not give Castano the authority to bind Trucking.

**Apparent Authority**

The Court also rejects Plaintiff's apparent authority argument.  "The doctrine of apparent authority is based on estoppel.  It may arise either from a person knowingly permitting another to hold himself out as having authority or by a person's actions which lack such ordinary care that they are tantamount to clothing another with an indicia of authority, thus leading a reasonably prudent person to believe that the "agent" has the authority he purports to exercise." *Jim Stephenson Motor Co., Inc. v. Amundson*, 711 S.W.2d 665, 669 (Tex. App. 1986) (internal citations omitted).

The evidence in this case shows that both parties contemplated entering into a personal loan to Castano and pledging corporate assets as collateral to secure repayment of the loan. Plaintiff's own statement demonstrates her understanding that she was lending money to Castano in her individual capacity, for the stated purpose of helping her with "cash flow problems of *her companies*."

> At the end of August 2012, my husband and I agreed to enter in to a business **with Maricela Castano**, who needed cash to operate her trucking and construction enterprises in the Eagle Ford Shale area.  She offered that if *we lend her money* to *help with cash flow problems of her companies*, she will provide the opportunity later to get us into the business of a disposal oil well project as active investor partners.

(ECF No. 49-6 at 1).  Plaintiff also suggests that the parties had a quid pro quo arrangement where Plaintiff agreed to loan the money to Castano in exchange for her promise to include her as an active investor in future disposal oil well projects.  These circumstances impose a heightened duty of inquiry and care on a Plaintiff alleging apparent authority.

Plaintiff relies on much of the same evidence to support its claim for apparent authority: (i) Tijerina instructed Castano to file a Certificate of Filing to incorporate STN Trucking with the Secretary of State; (ii) Castano and Tijerina are listed as directors on such filing, (iii) Castano represented to Plaintiff that she had the power to bind Trucking; (iv) Castano had possession and control of Trucking's vehicles and original certificates of title.

One of the most basic corporate governance principles is that the power, authority and responsibility for handling the business affairs of corporations are conferred upon the board of directors. The Board may vest authority in individuals who serve as officers of the corporation. Plaintiff claims to have relied on Trucking's Certificate of Filing, which created a board of directors consisting of two directors, Castano and Tijerina, to support its argument that Castano had the apparent authority to *unilaterally* bind Trucking. Castano attempted to pledge all of Trucking's assets as collateral without approval from either the board of directors or the company's sole shareholder. Under the circumstances, a reasonably prudent person would have required Tijerina (sole shareholder and one of two directors) to sign the loan documents.

Plaintiff cannot rely on Castano's self-serving representations that Tijerina authorized her to enter into the transaction. The declarations and actions of the purported agent are not sufficient to establish apparent authority. *See Great Am. Cas. Co. v. Eichelberger*, 37 S.W.2d 1050, 1052 (Tex. Civ. App. 1931)(rejecting apparent authority argument where "[t]he only evidence of the agent's apparent authority consisted of his declarations made at the time the policy was issued, and the fact that the company had placed in his hands copies of the "Little Giant Travel Accident Policy" and had authorized him to sign and deliver the policies.").

Nor is Castano's possession of the trucks and their certificates of title sufficient to lead a reasonably prudent person to believe that Castano had the authority to pledge all of Trucking's

assets to secure Castano's personal obligation.  If Plaintiff had conducted a vehicle title check immediately prior to executing the loan documents in August (instead of relying on the one conducted 3 months before), she would have discovered that Trucking transferred the vehicles to Transport.

The basis of Plaintiff's apparent authority argument revolves around conduct between Plaintiff and Castano. Plaintiff has not pled any facts from which the Court can reasonably infer that the principal corporation, Trucking, indicated to Plaintiff that Castano had authority to bind Trucking. Plaintiff dealt exclusively with Castano and had no interactions with the principal's sole shareholder, Tijerina.

There is little evidence of Tijerina's conduct that could reasonably be imputed to Trucking.  Nor is it accurate to say that Tijerina negligently acquiesced to Castano's attempt to exercise such authority. On June 22, 2012, Tijerina sent Castano a letter via express certified mail notifying her that she had no authority to conduct the affairs of Trucking. Tijerina also obtained a Temporary Restraining Order and Temporary Injunction restraining Castano from taking/impairing/disposing of any property of Trucking and from binding/contracting for Trucking prior to the execution of the loan documents with Plaintiff.

Tijerina's only mistake was waiting to obtain possession of the vehicles until the end of October, 2012. This fact alone is far from causing a reasonably prudent person to believe that Castano had the authority to unilaterally pledge all of Trucking's assets to secure what appears to be a personal loan to Castano.  Accordingly, Tijerina's conduct does not rise to the level of negligently clothing Castano with such authority.

Based on the evidence, there are no genuine issues of material facts as to whether Castano had the authority to bind Trucking. Accordingly, the Court grants Transport's motion for summary judgment.

### Conclusion

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **February 14, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE